**THE ZABETIAN FIRM, PC**
Arash H. Zabetian  | SBN 291403
6320 Canoga Avenue
15th Floor
Woodland Hills, CA 91367
Phone: (323) 477-2424
Fax: (323) 477-2472
Email: arash@zabetianlaw.com

*Attorney for Haytham Faraj*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF SUBPOENA DUCES TECUM TO HAYTHAM FARAJ<br><br>Haytham Faraj<br><br>        Petitioner,<br><br>THE TRIAL LAWYERS COLLEGE,<br>a nonprofit corporation,<br><br>        Plaintiff,<br><br>v.<br><br>GERRY SPENCES TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation, and<br>GERALD L. SPENCE, JOHN ZELBST,<br>REX PARRIS, JOSEPH H. LOW, KENT SPENCE, DANIEL AMBROSE, and JOHN JOYCE, individuals,<br><br>        Defendants | CASE NO.: 2:21-mc-01003<br><br>**NOTICE OF MOTION AND MOTION OF NONPARTY MOVANT HAYTHAM FARAJ TO QUASH SUBPOENAS; MEMORANDUM OF POINTS OF AUTHORITY IN SUPPORT OF MOTION TO QUASH; DECLARATION OF HAYTHAM FARAJ IN SUPPORT OF MOTION TO QUASH; DECLARATION OF ARASH ZABETIAN IN SUPPORT OF MOTION TO QUASH; EXHIBITS A-G** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF MOTION AND MOTION TO QUASH NON-PARTY SUBPOENAS</u>

TO PLAINTIFF THE TRIAL LAWYERS COLLEGE ("TLC") AND ALL COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on Thursday, July 13, 2021, or as soon thereafter as this Motion may be heard, Non-Party Movants hereby move the District Court for the Central District of California to quash the subpoenas issued by Plaintiff TLC on or around April 3, 2021, and May 24, 2021, to Non-Party Haytham Faraj in the Central District of California. The subpoenas were issued in connection with a civil action filed in the District Court of Wyoming on April 28, 2020, captioned *The Trial Lawyers College v. Gerry Spence Trial Lawyers College at Thunderhead Ranch, et al.*, Case No. 20-cv-0080, seeking sixteen (16) facially overbroad categories of non-specific documents. Non-Party Haytham Faraj also requests sanctions in the form of attorney's fees and costs incurred in researching and preparing the instant motion to quash pursuant to Fed. R. Civ. P. 45(d)(1).

This motion, made pursuant to Federal Rule of Civil Procedure 45(c), is based on this notice, the attached memorandum of points and authorities, all accompanying declarations and exhibits, and on such oral argument as may be received by this Court. The Non-Party Movant, Haytham Faraj, respectfully request that this Court grant this motion and quash the subpoenas issued by TLC in their entirety.

Dated: June 30, 2021

_____
Arash Zabetian
Attorney for Non-Party Movant,
Haytham Faraj

# TABLE OF CONTENTS

I.   BACKGROUND/RELEVANT FACTS ........................................................ 4

    A.   PARTIES INVOLVED IN THE UNDERLYING ACTION ........................................ 4

    B.   THE UNDERLYING ACTION ........................................................ 5

    C.   SUBPOENA RECIPIENT (HAYTHAM FARAJ) ................................... 6

    D.   THE SUBPOENAS ........................................................ 7

II.  LEGAL STANDARD ........................................................ 14

    A.   RULE 26 APPLIES TO RULE 45 SUBPOENAS ................................. 14

    B.   THE COURT MUST QUASH A SUBPOENA THAT SUBJECTS A PERSON TO UNDUE BURDEN. ........................................................ 15

    C.   NONPARTIES ARE AFFORDED EXTRA PROTECTION ................................... 16

III. ARGUMENT ........................................................ 17

    A.   TLC'S APRIL 3, 2021 SUBPOENA MUST BE QUASHED FOR IMPROPER SERVICE. ........................................................ 18

    B.   TLC'S MAY 24, 2021 SUBPOENA MUST BE QUASHED BECAUSE IT FAILED TO ALLOW A REASONABLE TIME TO COMPLY ................................... 19

    C.   TLC'S SUBPOENAS MUST BE QUASHED BECAUSE THEY ARE FACIALLY OVERBROAD AND IMPOSE AN UNDUE BURDEN ON NON-PARTY FARAJ BY SEEKING DOCUMENTS AVAILABLE FROM – AND ALREADY IN POSSESSION OF – THE PARTIES ........................................................ 20

    D.   RULE 45 SANCTIONS ARE WARRANTED ................................... 29

    E.   TYPE/AMOUNT OF SANCTIONS ................................... 34

IV.  CONCLUSION ........................................................ 35

## MEMORANDUM OF POINTS AND AUTHORITIES

NOW COMES Nonparty Petitioner Haytham Faraj, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 45, moves this Court for an Order quashing the subpoenas *duces tecum* issued to him by the Trial Lawyers College out of the District of Wyoming. In support therefore, Nonparty Petitioner states as follows:

## I.   BACKGROUND/RELEVANT FACTS

The offending subpoenas *duces tecum* (*See* Exhibits A and B) were issued to Haytham Faraj ("Faraj") by the Trial Lawyers College ("TLC") in connection with a trademark infringement and trade secret misappropriation lawsuit it filed in the District of Wyoming, *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch, et al.*, No. 1:20-cv-0080 (D. Wyo.) (the "underlying action").[1] Both subpoenas are facially overbroad, unduly burdensome, patently irrelevant, and must be quashed.

### A. Parties Involved in The Underlying Action

TLC is a nonprofit corporation that provides training programs to lawyers. (Ex. C). Gerald L. Spence ("Spence") founded TLC in 1993 and has been affiliated with it since that time. *Id.* TLC began operating in 1994 at the Thunderhead Ranch in Dubois, Wyoming, a ranch owned by the Spence Foundation. *Id.*

In 2012, TLC applied for and received two federally registered trademarks. The first, Registration Number 4,197,908 (the "Name Mark"), is a trademark for "TRIAL LAWYERS COLLEGE" in standard characters, without claim to any particular font, style, size, or color. The second, Registration Number 4,198,054 (the "Design Mark"), is a trademark for a stylized design of a cloud with a bolt of lightning. *Id.*

---

[1] The Court's memorandum order granting in part, and denying in part, Plaintiff's motion for preliminary injunction contains a fair summary of the case. *See* Ex. C (Dkt. 46)

**MOTION TO QUASH NON-PARTY SUBPOENAS**

Until May 6, 2020, Spence, John Zelbst, Rex Parris, Joseph H. Low, and Kent Spence (collectively, the "Spence Group") undisputedly served on TLC's Board. *Id.*

On April 28, 2020, the Spence Group filed a Complaint in Wyoming state district court seeking to dissolve TLC, audit it, and have the court appoint a receiver to oversee and manage TLC's funds until the court is able to decide whether it should dissolve it (the "state court dissolution action"). Upon information and belief, that lawsuit is still ongoing.

Two days later, on April 30, 2020, the Spence Group registered Defendant "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" as a Wyoming nonprofit corporation. *Id.*

On May 6, 2020, the Board split.[2] (Ex. C). Shortly thereafter, the Spence Foundation terminated TLC's lease on the Thunderhead Ranch. TLC vacated the premises. *Id.*

**B. The Underlying Action**

On May 13, 2020, exactly one week after the split, and 15 days after the Spence Group filed the state court dissolution action, TLC filed its own lawsuit in the Wyoming federal district court alleging the Spence Group and "Gerry Spence Trial Lawyers College at Thunderhead Ranch" (now registered as "Gerry Spence's Trial Institute[3]")) violated the Lanham Act, 15 U.S.C. §§ 1114, et. seq., and 15 U.S.C. § 1125(a) by infringing TLC's federally registered trademarks and engaging in unfair competition, false designation of origin, passing off, and false

---

[2] According to TLC, the in-fighting between Board Members began in December 2019 when half the Board (the "Sloan Group") declined to support the Spence Group's proposal to build a library in Spence's honor on the land TLC leased from the Spence. The Spence Group denies this characterization.

[3] Indeed, the Court in the underlying action has specifically ruled that Defendants' use of the name, "Gerry Spence Trial Institute" which has been used continuously since the court's issuance of the preliminary injunction, does *not* infringe on Plaintiff's trademarks. Ex. C. The Court further held, that use of the name "Gerry Spence" and the "Thunderhead Ranch" do *not* infringe on Plaintiff's rights. *Id.*

**MOTION TO QUASH NON-PARTY SUBPOENAS**

advertising related to those marks. TLC also alleges the Spence Group violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Defend Trade Secrets Act, 18 U.S.C. § 1836 and Wyo. Stat. Ann. § 40-24-101, *et. seq.*, through the Spence Group's unauthorized access and misuse of TLC's "confidential and proprietary computer files," specifically, its database of alumni contact information.

Specifically, TLC claims that the Spence Group, or one of them, accessed Plaintiff's database/listservs and used that information to create a new listserv to send mass emails to recipients whose information they obtained from TLCs listservs. Spence and others sent the new listserv recipients an email from "Gerry Spence's Trial Lawyer College" stating that the old listserv was experiencing difficulties and that Spence authorized a new listserv. Spence and others also posted a video on YouTube which used both TLC's Name and Design Marks. In the video, Spence says, "my vision, my friends, for this college, is you. And it will stay alive and beautiful and ringing across the land, as long as you're there."

### C. Subpoena Recipient (Haytham Faraj)

Haytham Faraj ("Faraj") is an attorney, TLC alumni, and former TLC instructor. Faraj is not and has never been a member of the TLC Board. Faraj is not a party to the underlying action nor any other litigation involving TLC, the Sloan Group, the Spence Group, or Gerry Spence's Trial Institute ("GSTI").[4] Faraj did not have – and TLC does not alleged that Faraj had – any involvement whatsoever in the alleged trademark infringement or the alleged misappropriation of TLC's alumni database/listserv. Faraj's only tangential relationship to the underlying action, as alleged in the TLC's Second Amended Complaint, is his after-the-fact appointment to the Board of GTSI, which has no bearing whatsoever on TLC's claims. As TLC well knows, Faraj is not in possession of any documents relevant

---

[4] In its Preliminary Injunction Order, the underlying court specifically held that Defendants' use of the name "Gerry Spence's Trial Institute" is permissible and "does not constitute infringement." (Ex. C, p. 15).

to TLC's underlying action that are not *already* in TLC's possession, or which can be obtained from the named Defendants.

### D. The Subpoenas

Nonetheless, sometime between April 1 and April 3, 2021, TLC attempted to serve Faraj with a subpoena at his home in Topanga, California. The process server rang the bell and knocked on the door, which a young babysitter answered. When the process server inquired about Faraj's whereabouts, he was told that he is at work. At that time, the TLC process server threatened to arrest the babysitter, who was holding a 9-month-old baby, and take her to jail. A subpoena was discovered on the evening of April 3, 2021, on top of a delivered box at the front door of the Faraj residence. (Ex. A). The subpoena commanded production of the following documents:

1. Produce all documents, including correspondence between you and any person, and any posts you have made to any social media website (including, but not limited to, Facebook, Twitter, Instagram, YouTube, and LinkedIn) that relate to Defendant "Gerry Spence's Trial Lawyers College," (now doing business as "Gerry Spence's Trial Institute"), including all communications that discuss the concept and formation of that entity, whether or not that entity had been named and/or registered as a nonprofit organization, and regardless of whether other names were used to describe that entity over the course of time.

2. Produce all documents, including correspondence between you and any person, and any posts you have made to any social media website (including, but not limited to, Facebook, Twitter, Instagram, YouTube, and LinkedIn), from December 19, 2019 until present, that relate to Plaintiff.

3. Produce all documents, including correspondence between you and any person, and any posts you have made to any social media website (including, but not limited to, Facebook, Twitter, Instagram, YouTube, and LinkedIn) related to the New Listserv.

4. Produce all correspondence between you and Defendants, from December 19, 2019 until present, related to Thunderhead Ranch.

**MOTION TO QUASH NON-PARTY SUBPOENAS**

5. Produce all documents containing contact information for alumni of Plaintiff Trial Lawyers College from December 19, 2019 to present.

6. Produce all documents and correspondence related to any listsery from December 19, 2019 to present, that relate to Trial Lawyers College regarding: TLC's Marks; GSTLC; any programs that offer trial skills training; and/or seminars or events related to trial skills involving any of the Defendants and/or Lee "Jody" Amedee III, Hunter Thomas Hillin, Haytham Faraj, and/or Adrian Baca.

7. Produce all documents and correspondence related to any of Plaintiff's Listserv (including, but not limited to, the TLC Alumni listserv), including, but not limited to, any correspondence between you and the Defendants in this action related to any messages you have sent using TLC's listservs.

8. Produce all agreements that you have entered into with any Defendant in this lawsuit from December 19, 2019 to present.

9. Produce documents sufficient to show any payments or monetary gifts you have received from any Defendant in this lawsuit from December 19, 2019 to present.

10. Produce documents sufficient to show any payments you have made or monetary gifts you have given to any Defendant in this lawsuit from December 19, 2019 to present.

11. Produce all documents and communications related to any seminars or events planned at Thunderhead Ranch that You and/or any named Defendant plan to teach, present, instruct or otherwise participate in for the calendar years 2021 and 2022, including but not limited to any contracts, leases, agendas and attendance lists of faculty, students, service providers, and/or other attendees.

12. Produce all documents and communications related to any seminars or events planned at any location (including virtual, remote, or online presentations) that You and/or any named Defendant plan to teach, present, instruct or otherwise participate in for the calendar years 2021 and 2022, including but not limited to any contracts, leases, agendas and attendance lists of faculty, students, service providers, and/or other attendees.

13. Produce all documents and communications related to the Board of Directors of either GSTLC or TLC, including but not limited to any board meeting minutes, written materials, agendas, calendar entries or any recordings of board meetings.

**MOTION TO QUASH NON-PARTY SUBPOENAS**

14. Produce all documents and communications related to the putative Special Meeting of the Board of Directors of the Trial Lawyers College on July 14, 2020 as referenced in the attached Exhibit A-1.

15. Produce all documents and communications related to Your putative election to the Board of Directors of the Trial Lawyers College on July 14, 2020.

16. Produce all documents and communications related to your putative membership on the Board of Directors of the Trial Lawyers College, including but not limited to any activities, operations, decisions or other actions of the Board of Directors of the Trial Lawyers College.

On April 13, 2021, Arash Zabetian ("Zabetian") sent written objections on behalf of Faraj to Plaintiff's counsel, Christopher K. Ralston ("Ralston"), objecting to the improper service of the subpoena and the overbroad, irrelevant, unduly burdensome and expensive nature of each document request. *See* Objection Letter, attached hereto as Exhibit D. Ralston did not respond or otherwise acknowledge Faraj's substantive objections.

Nonetheless, on April 22, 2021, despite receipt of Zabetian's notice of representation and objections to the improperly served and facially overbroad subpoena issued to Faraj, Rose Berlow ("Berlow"), a paralegal with Raltson's firm, reached out directly to Mr. Faraj inquiring whether he would accept service of the exact same facially overbroad subpoena "[i]n order to avoid the need to make additional service attempts of the subpoena at [his] residence." (Ex. F).

Faraj forwarded the email to Zabetian, who advised as follows:

Your firm has been put on notice of my representation of Mr. Faraj. Yet you continue to communicate directly with a represented person. This is a final notice for your firm to cease and desist from such unethical and illegal conduct. We are evaluating our options regarding the reprehensible conduct of your firm and will deal with it accordingly. The bullying tactics stemming from cowardice and weakness will not be tolerated. All improper conduct by your firm will be addressed in due time. Until then, **this is a final warning** on this matter. Next violation will be reported to the state bar and will result in

an ex parte Rule 11 application before an appropriate court without any further notice.

Ralston, feigning ignorance, responded as follows:

Settle down, Rose. When and how were we put on notice of your purported representation? I'm happy to evaluate this. And I also appreciate that your letter below was meant for posturing or to impress potential clients. We will evaluate and get back. In the meantime, please don't delay responding to the subpoena per the rules.

On April 26, 2021, Zabetian reattached his April 13, 2021, objection letter and responded as follows:

You should have already received my objection to subpoena. Review your file to make sure. I attach it here in case.

I'm glad to hear your quick evaluation of me. While completely unnecessary, it is quite informative.

I discussed your request to accept service with Mr. Faraj. We are willing to accept service on the condition that your client post the following to the F Warrior Facebook page and TLC listserv:

"In our lawsuit against members of the TLC board we sought to harass and intimidate some of the alumni of the college who sided with Gerry Spence by serving them third party subpoenas at their homes using tactics that are intended to terrorize their families, disturb intimidate and bully.

One such person is Mr. Haytham Faraj. Our process server went to his home and threatened a young lady baby sitting the Faraj baby with jail for lying about Mr. Faraj not being home. That left her emotionally distraught and afraid.

After our tactics failed, we then reached out to Mr. Faraj directly, without going through his lawyer who we knew about because he sent us a notice of representation, and asked Mr. Faraj if he would accept service. He forwarded the message to his lawyer who then informed us that we are improperly contacting his client directly, which we know because we are

**MOTION TO QUASH NON-PARTY SUBPOENAS**

lawyers. He also informed us that Mr. Faraj would accept service if we publish this statement and apology.

Accordingly, we the TLC board members opposed to Gerry Spence, apologize for the uncivilized and bullying tactics that we used to try and intimidate and terrorize non-party Mr. Faraj and his family.

TLC Board members opposed to Gerry Spence"

Looking forward to your response…

Unsurprisingly, Ralston did not respond. Instead, a month later, on May 24, 2021, Ralston served a second, substantially *identical* subpoena on Faraj. (Ex. B).[5] TLC made no attempt whatsoever to limit the scope of its facially overbroad (and improperly served) subpoena before proceeding to personally serve a subpoena seeking the exact same facially overbroad series of documents on Faraj. The subpoena commanded production by May 28, 2021, four (4) days after it was served.

On June 8, 2021, Faraj, again through counsel, sent a follow-up email to Ralston regarding the service of another identical subpoena after service of objections to the original, facially overbroad subpoena. (Ex. G). Zabetian urged Ralston to withdraw the subpoena and advised that Faraj intended to file a motion to quash the subpoena, including a request for fees and sanctions, if it was not withdrawn by the following evening. Ralston did not respond or otherwise agree to withdraw the facially overbroad subpoena he served on Faraj for the second time *after having already received Faraj's objections to the initial, facially overbroad subpoena*.

On June 15, 2021, Stephanie Poucher ("Poucher"), another attorney with Ralston's firm, emailed Zabetian "regarding the subpoena TLC served on Mr.

---

[5] TLC also served the same or substantially similar subpoenas on several other similarly situated nonparty attorneys who "took Spence's side" following the split of TLC's Board. **(Ex. E).**

**MOTION TO QUASH NON-PARTY SUBPOENAS**

Faraj on May 25, 2021," and inquiring whether he was "available for a discovery conference on June 22 at 9:00 a.m. (PDT) so that we may **discuss Mr. Faraj's objections**." Poucher provided no explanation whatsoever of the specific issues to be discussed during the purported discovery conference, the specific requests in dispute, or any statement of TLC's position as to those specific requests (or any legal authority it believes is dispositive of the issues). *See* L.R. 37-1.

Zabetian advised Poucher that he had a trial beginning June 21, 2021, but would be available to discuss on or after July 1, 2021. Poucher, apparently unaware of the very specific objections raised by Faraj in response to the previously issued subpoena commanding production of the **exact same documents**, responded by "remind[ing]" Zabetian that Faraj "failed to timely respond to the lawfully issued subpoena TLC personally served Mr. Faraj with on May 25, 2021" and, therefore, "any objections Mr. Faraj might now have to the subpoena are untimely and are therefore waived."

Poucher continued by claiming that, "[e]ven if Mr. Faraj had not failed to object to the subpoena TLC served him with on May 25, 2021, the subpoena is narrowly-tailored in temporal scope and is reasonably limited to documents relevant to TLC's claims against the Defendants in the underlying case" because, according to Poucher, evidence *already in her possession* "unequivocally show[s]" that Defendants have "continued to falsely hold out Mr. Faraj [and others] as members of the TLC Board. Poucher went on to claim that "the underlying Defendants' actions in deceitfully holding Mr. Faraj and his co-conspirators out as the TLC Board members has caused confusion among the TLC alumni and the public, thereby directly engaging in unfair competition, false designation of origin, passing off, and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." Despite unjustifiably accusing Faraj of being a "co-conspirator" in a lawsuit he is not named, Poucher still failed to provide any explanation

**MOTION TO QUASH NON-PARTY SUBPOENAS**

whatsoever as to the relevance of a single, specific request, any explanation of the specific documents it seeks from Faraj that are not already in TLC's possession, or any legitimate response to the specific objections raised by Faraj to the facially overbroad subpoena served on him and other similarly situated attorneys who "sided" with Spence. Thus, any documents sought from Faraj are unnecessary and duplicative given TLC already has evidence "unequivocally show[ing]" what it wishes to prove. The harassment techniques employed by TLC and its counsel in this action should not be condoned.

She continued, "Please note, as TLC has made clear to the other subpoena recipients, TLC is expressly exempting from Mr. Faraj's production any (1) communications sent to and on behalf of TLC; and (2) communications posted on the TLC Listserv. We are, however, still requesting all posts to other listservs, including the GSTLC Listserv," which the named defendants maintain control. Based on this representation, Zabetian asked Poucher to modify the subpoena as suggested and resend it to him so that they could engage in a more productive conversation regarding the specific documents sought by TLC. TLC's counsel refused, claiming that "[t]here is no requirement that we reissue the subpoena." *But cf.*, *Little v. JB Pritzker for Governor*, 2020 WL 1939358 (N.D. Ill. 2020) at *8 ("The latter fact is particularly significant because the concerns raised by East Lake's counsel should have alerted plaintiffs to the fact that their subpoena was problematic for a number of reasons. Had plaintiffs followed Local Rule 37.2, they would have either modified the subpoena (as they have belatedly attempted to do in their motion) or withdrew it and East Lake would have had no need to incur the cost of filing its response/cross-motion to quash. Under these circumstances, it is appropriate for plaintiffs to pay the reasonable costs that East Lake incurred in filing its opposition/cross-motion to quash."); *See also Duong v. Groundhog Enterprises, Inc.*, 2020 WL 2041939 (C.D. Cal. 2020) at *5.

**MOTION TO QUASH NON-PARTY SUBPOENAS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TLC's counsel has made it undeniably clear that the purported discovery conference was not intended to actually facilitate a discussion or resolution the facially overbroad and unduly burdensome nature of the subpoena, but rather to set Faraj up for its pending motion to compel the same documents it has ***already*** ***received*** from at least three other sources. To be clear, the Spence Group has already produced the exact documents it now seeks from Faraj and at least 5 other non-party attorneys. Moreover, on May 27, 2021, TLC obtained **more than** **150,000 pages of documents covering exactly the same topics** from Jody Amedee, in response to a substantially similar subpoena. Further, on June 8, 20201, another Defendant, John Joyce, produced documents in response to Rule 34 requests, which covered the same subjects as the subpoena. Yet, **TLC and its** **counsel are continuing to threaten Faraj with a motion to compel exactly what** **it has already received from the Defendants and another similarly situated** **nonparty.**

## II.   LEGAL STANDARD

### A. Rule 26 Applies to Rule 45 Subpoenas

"The reach of a Rule 45 subpoena is subject to the general relevancy standard applicable to discovery under Federal Rule of Civil Procedure 26(b)(1)." *Duong.*, 2020 WL 2041939, at *6 (*citing* Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules.")). A cornerstone of discovery is proportionality. Recognizing how discovery could be misused, Congress in 2015 amended Fed. R. Civ. Pro. 26. Rule 26(b)(1) now provides that:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the

**MOTION TO QUASH NON-PARTY SUBPOENAS**

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

(emphasis added).

"Moreover, as set forth in Rule 26(b)(2)(C)(i), courts are required to limit discovery if, *inter alia*, it 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.' This rule applies to Rule 45 subpoenas." *See* Fed. R. Civ. P. 26(b)(2)(C)(i)); *See also Duong*, 2020 WL 2041939, at *7.

## B. The Court Must Quash a Subpoena That Subjects a Person to Undue Burden.

Rule 45 also provides for the protection of persons subject to a subpoena by requiring one issuing or serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Thus, lawyers who issue subpoenas have an *obligation* to minimize the burden on the third parties. Fed. R. Civ. Pro. 45(d)(1). The duty to avoid imposing undue burden or expense on a third party correlates to a lawyer's ability to issue a subpoena without specific court approval (See Rule 45 Advisory committee Note of 1991). In other words, the right carries with it the obligation not to abuse that right. As the Advisory Committee has noted, misuse of the subpoena power may be a violation of the discovery rules and/or the rules of ethics governing attorney conduct. *See also* Sedona Conference Journal, Vol. 22 ("Sedona Conference Commentary").

The rule imposes upon the court where compliance is required a responsibility to "enforce this duty and impose an appropriate sanction— which may include … reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* Indeed, pursuant to Rule 45, a court *must* quash or modify a subpoena if it, among other possibilities, *subjects a person to undue burden*. Fed. R. Civ. P.

45(3)(A)(iv). "In evaluating whether a subpoena is unduly burdensome, the court balances the **burden imposed** on the party subject to the subpoena by the discovery request, the **relevance** of the information sought to the claims or defenses at issue, the **breadth of the discovery request**, and the **litigant's need for the information**." *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, 2014 WL 3573400, at *2 (S.D. Cal. July 18, 2014) (internal citations omitted) (emphasis added).

### C. Nonparties Are Afforded Extra Protection

Non-parties subject to a subpoena duces tecum "deserve extra protection from the courts." *High Tech Medical Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. Columbia Broadcasting System*, 666 F.3d 364, 371-72 (9th Cir. 1982). In fact, courts have routinely held that "it is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery." *See, e.g., Pinehaven Plantation Prop., LLC v. Mountcastle Family LLC*, 2013 WL 6734117 (M.D. Ga. Dec. 19, 2013). Similarly, as the First Circuit aptly explained: "It is also noteworthy that the respondents are strangers to the . . . . litigation; insofar as . . . they have no dog in that fight. Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see United States v. Columbia Broad. Sys., Inc.,* 666 F.2d 364, 371 (9th Cir.1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party.")

As our courts have recognized, when the requesting party has "not shown [that it] attempted to obtain documents from the [opposing party] in an action prior

**MOTION TO QUASH NON-PARTY SUBPOENAS**

1    to seeking the documents from a non-party, a subpoena duces tecum places an

2    undue burden on a non-party." *Soto v. Castlerock Farming & Transp., Inc.*, 282

3    F.R.D. 492, 505 (E.D. Cal. 2012) (collecting cases). Further, "when an opposing

4    party and a non-party both possess documents, the documents should be sought

5    from the party to the case." *Soto*, 282 F.R.D. at 505. Thus, "[i]n its undue burden

6    inquiry, the Court properly may evaluate whether information requested through a

7    nonparty subpoena is readily available from a party." *Duong*, 2020 WL 2041939 at

8    *7; *See also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)

9    (concluding that subpoena propounded upon nonparty

10   imposed undue burden where propounding party could "more easily and

11   inexpensively obtain the documents" from a party); *Corbett v. eHome Credit*

12   *Corp.*, 2010 U.S. Dist. LEXIS 77712 at *12, 2010 WL 3023870, at *4 (E.D.N.Y.

13   Aug. 2, 2010) ("Since the information sought by subpoena is," *inter alia*, "easily

14   obtainable from another source, ... the burden imposed by the third-party

15   subpoenas outweighs any likely benefit to [the plaintiff] in prosecuting the instant

16   action."); *Burns v. Bank of Am.*, No. 03 Civ. 1685 (RMB) (JCF), 2007 U.S. Dist.

17   LEXIS 40037 at *46, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) ("[I]f

18   documents are available from a party, it has been thought preferable to have them

19   obtained pursuant to Rule 34 rather than subpoenaing them from a non-party

20   witness [pursuant to Rule 45]." (alterations in original) (citation and quotation

21   marks omitted)).

22   ## III.   ARGUMENT

23       TLC's subpoenas to Faraj must be quashed because they are facially

24   overbroad, irrelevant, and to the extent relevant, seek discovery of documents from

25   a nonparty that are already in TLC's possession or which can be obtained from

26   defendants in the underlying action, i.e., the Spence Group. *See e.g.*, *Casun Inv.,*

27   *A.G. v. Ponder*, 2019 WL 2358390, at *6 (D. Nev. June 4, 2019).

28

Before claiming that the documents are not available from any other source, Plaintiff "was obliged to serve a document request on [Defendants] and determine, through [its] review of any resulting production, that the production was deficient or that documents were, or appeared to be, altered." *Duong*, 2020 WL 2041939, at *8. "Upon such a determination, [Plaintiff] then would have been obliged to meet and confer with [Defendants] to attempt to resolve the discovery dispute and seek intervention of the Court pursuant to Rule 37 if unsuccessful in doing so." *Id.* (citing Fed. R. Civ. P. 37; Cal. C.D. L.R. 37-1 to -4). None of this has occurred. Indeed, despite TLC's request for a "discovery conference," it is clear that TLC had no intention whatsoever of actually discussing the issues with its facially overborad subpoena, having filed numerous motions to compel production of the exact same documents and asserting that Faraj's objections had been waived so the conference should not "take very long" for that reason. (Ex. G). TLC must not be allowed to circumvent the rules of discovery by subpoenaing the same documents it already has in its possession or which should have been obtained from one or more of the named defendants in the underlying action.[6]

Because the document requests are facially overbroad, the initial burden is on TLC to prove that the subpoenas seek relevant, discoverable information. For the reasons set forth below, TLC cannot meet its burden of proving that the requests are relevant and proportional to the needs of the underlying action.

## A. TLC's April 3, 2021 Subpoena Must Be Quashed for Improper Service.

Section 45(b)(1) of the Federal Rules of Civil Procedure ("FRCP") require that the service of subpoena be made by "delivering" a copy of subpoena to the person being served. This mandate has been interpreted to require a personal service. See *FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson* (D.C. Cir.

---

[6] Upon information and belief, discovery is closed in the underlying action, with the exception a few depositions that parties agreed could go forward.

**MOTION TO QUASH NON-PARTY SUBPOENAS**

1980) 636 F2d 1300, 1312-1313 (dictum). In any event, the FRCP 4(e)(2) substituted service provisions (leaving copy of complaint at dwelling or serving authorized agent) do not apply to subpoenas because Rule 45(b)(1) requires delivery "to the named person …" *Doe v. Hersemann* 155 FRD 630, 630 (N.D. Ind. 1994).

Here, the process server, identified as N. Banfield (#5054 LA), attempted to serve the original subpoena through a substitute service. After threatening Faraj's babysitter with arrest and jailtime, a subpoena was discovered on top of a delivered box at the front door of the Faraj residence on the evening of April 3, 2021. As such, the service of the subpoena is defective. For this reason, as well as those articulated below, the original subpoena must be quashed.

### B. TLC's May 24, 2021 Subpoena Must Be Quashed Because It Failed to Allow A Reasonable Time to Comply.

Pursuant to Rule 45, a court must quash a subpoena that fails to allow a reasonable time to comply. Commanding production of sixteen facially overbroad categories of documents within four (4) days of service is undoubtedly unreasonable. Reasonable time has been generally held to be fourteen days. *See e.g., In re New England Compounding Pharmacy, Inc. Products Liability Litigation,* 2013 WL 6058483, * 7 (D.Mass.2013) (collecting cases). Because the subpoena was facially overbroad, even more than 14 days to comply with the subpoena would have been necessary and warranted. For this reason, the May 24, 2021, subpoena must be quashed.

Having timely served his objections to the original, improperly served subpoena, Faraj was no longer under any obligation to produce the requested documents—not unless and until ordered to do so by the Court. See *S.E.C. v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010) (stating that "intervening court involvement is required prior to initiation of contempt proceedings if the recipient

of the subpoena serves a written objection on the party or attorney designated in the subpoena" and "[o]n receipt of such an objection, the party serving the subpoena 'may move the issuing court for an order compelling production or inspection,' and the production or inspection 'may be required only as directed in the order.'") (quoting Fed. R. Civ. P. 45(d)(2)(B)(i), (ii)). Faraj, however, need not wait for Plaintiff to file a motion to compel production of the requested documents before seeking an order quashing the facially overbroad subpoenas.

### C. TLC's Subpoenas Must Be Quashed Because They Are Facially Overbroad and Impose an Undue Burden on Non-Party Faraj By Seeking Documents Available from – And Already in Possession of – the Parties.

TLC simply cannot establish any legitimate need for any of the foregoing categories of documents demanded from Faraj:

__Request No. 1__ seeks "all documents[7]" that "relate to[8]" Defendant "Gerry Spence's Trial Lawyers College[9], (now doing business as 'Gerry Spence's Trial Institute')."

---

[7] According to the "definitions" provided by Plaintiff's subpoena, the term "__document[s]__" is to be given "***the broadest meaning afforded under the Federal Rules of Civil Procedure***" and includes, "without limitation, pamphlets, brochures, books, booklets, information sheets, papers, articles, journals, magazines, computer printouts, Internet search results, tapes, discs or other forms of audio, visual or audio/visual recordings, records, memoranda, reports, financial statements, affidavits, handwritten and other notes, transcripts, papers, indices, letters, envelopes, telegrams, cables, electronic mail messages, telex messages, telecopied messages, telephone messages, text messages, chat messages, social media messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcriptions or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, presentations, work papers, statements, summaries, opinions, journals, desk calendars, product labels, maintenance or service records, appointment books, diaries, billing records, checks, bank account statements, and invoices." Ex. B, p. 2 (emphasis added).

[8] "__Relate to__" purportedly "include[s], without limitation, referring to, relating to, constituting, comprising, containing, setting forth, summarizing, reflecting, stating, describing, recording, noting, embodying, studying, analyzing, discussing, evaluating, or ***directly or indirectly having any logical or factual connection with the matter addressed.***" Ex. B., p. 4 (emphasis added).

[9] Plaintiff defines "__Gerry Spence's Trial Lawyers College at the Thunderhead Ranch__" or "__GSTLC__" as "the entity originally registered as a Wyoming nonprofit corporation in April 2020 as "Gerry Spences Trial Lawyers College" and any other name it has operated under, including but not limited to '__Gerry Spence's Trial Lawyers College__,' 'Gerry Spence's Trial Lawyers Institute,' '__Gerry Spence's Trial Institute__,' and 'Gerry Spence's Trial

1    This overbroad and unduly burdensome nature of this request speaks for

2 itself. Requiring Faraj to search for and produce all documents that relate in any

3 way to a non-profit organization, including documents "relating to its formation,"

4 is unduly burdensome and patently unreasonable. Indeed, it is so facially overbroad

5 as to constitute harassment.

6    Because this request is facially overbroad, the burden of proving relevance is

7 on TLC. See *Casun Invest, A.G. v. Ponder*, No. 2:16-cv-2925-JCM-GWF, 2019

8 WL 2358390, at *5 (D. Nev. June 4, 2019) ("Where a discovery request appears

9 overbroad on its face ... the party seeking discovery has the initial burden of

10 showing its relevance."); *See also Williams v. City of Dallas,* 178 F.R.D. 103, 109

11 (N.D. Tex. 1998) ("A facially overbroad subpoena is unduly burdensome.").

12    Moreover, to the extent relevant evidence "related to" a named Defendant

13 exists, it is presumably in Defendant's possession and therefore imposes an undue

14 burden on Nonparty Faraj since it can more easily and inexpensively be obtained

15 from a party to the litigation.

16    **Request No. 2** seeks "all documents" from December 19, 2019 until present

17 that "relate to" "Plaintiff."[10]

18    Like its first request, this request is so facially overbroad as to constitute

19 harassment. In fact, even if the definition of "document" was limited to

20 "correspondence between [Nonparty Faraj] and any person, and any posts [Faraj]

---

22 Warriors College,' and its members, managers, officers, directors, agents, employees, predecessors, successors, assigns, and subsidiaries whether acting directly or through any representative and/or agent, including but not limited to attorneys, accountants, or other agents and including any incorporated or unincorporated businesses, and all brands operating under the direction or control of GSTLC." Ex. B, pp. 2-3.

25 [10] As yet another example of Plaintiff's egregious failure to narrowly tailor its requests, it defines "Plaintiff" as "The Trial Lawyers College, including its members, managers, officers, directors, agents, employees, **predecessors,** successors, assigns, subsidiaries, and affiliated companies whether acting directly or through any representative and/or agent, including but not limited to attorneys, accountants, or other agents and including any incorporation or unincorporated businesses or nonprofit organizations." Ex. B (emphasis added). This is almost impossible to decipher given, by this definition, Defendants themselves, as Plaintiff's alleged "predecessors," would simultaneously be considered "Plaintiffs."

**MOTION TO QUASH NON-PARTY SUBPOENAS**

ha[s] made to any social media website" (by its own definitions, it is not), Ex. B, p. 5, the request remains patently overbroad in that it is not limited to documents related to Defendants, the alleged trademark infringement or alleged misappropriation of TLC's alumni database, or any other claim or defense in the underlying action. Indeed, as the Ninth Circuit has explained, *sanctions* are appropriate where a subpoena requests "all documents" relating to certain people, products or procedures, thereby imposing an undue burden on the subpoenaed party. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 427 (9th Cir. 2012) (citing *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-14 (9th Cir. 2003), and *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994)). This request must be quashed.

**Request No. 3** seeks "all documents...related to the New Listserv[11]."

Again, this request is overbroad on its face. Faraj does not control the "New Listerv." Any relevant "documents" "related to" the "New Listerv" are undoubtedly in Defendants' possession, and therefore can be obtained through more convenient and less burdensome means – i.e., through a party.

**Request No. 4** seeks all "correspondence[12]" between Nonparty Faraj and *any Defendant* from December 19, 2019 to the present "related to Thunderhead Ranch.[13]"

---

[11] The "New Listerv" is defined as "the gaggle.email listserv gerry.spence.college@gaggle.email, the gaggle.email listserv gerry.spence.trial.institute@gaggle.email, or any other listserv used by defendants in this action to send email communications regarding TLC or the provision of services similar to those offered by TLC."

[12] "Correspondence" is not defined by Plaintiff, but Nonparty assumes that Plaintiff intended to give this term the same definition it gave to the term "communication," which TLC states "*shall be construed in its broadest sense* and shall mean every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer, or exchange of information, whether orally, face-to-face, or by telephone, mail, personal delivery, electronic delivery, document, or otherwise." *Id.* p. 2 (emphasis added).

[13] For reference, "Thunderhead Ranch" is defined as "the Thunderhead Ranch in Dubois, Wyoming, owned by the Spence Foundation for People's Attorneys, Inc., where TLC conducted its training and education services from August 1994 until May 2020." Ex. B, p. 4.

**MOTION TO QUASH NON-PARTY SUBPOENAS**

This request is also overbroad in that it is not limited to conversations related to the ongoing litigation. In fact, it is wholly unclear how any correspondence "related to Thunderhead Ranch" from December 19, 2019, to the present, is in any way relevant to the underlying litigation. As the underlying court specifically explained, the preliminary injunction issued in the underlying action "does not enjoin or restrain Defendants from referencing or stating that classes will be held at Thunderhead Ranch—a ranch owned by the Spence Foundation." Ex. C, p. 14; *See also* Ex. B, p. 4 (defining "Thunderhead Ranch" as "the Thunderhead Ranch in Dubois, Wyoming, owned by the Spence Foundation for People's Attorneys, Inc., where TLC conducted its training and education services from August 1994 until May 2020"). "Moreover, it is unclear...why this information is not otherwise available from [Defendants] given that, by the express language of the request, it was party to [the only potentially relevant] communications." *Duong*, 2020 WL 2041939, at *8. Thus, to the extent any such communications exists and are relevant, they can, should, and/or already have been obtained from Defendants.

**Request No. 5** seeks "all documents containing contact information" for "alumni of Plaintiff" from December 19, 2019, to the present.

This request is, again, facially overbroad and ambiguous. In fact, by its own "definition," Plaintiff is already in possession of the "contact information" for its own alumni. *See* Ex. B, p. 4 (defining "TLC Database" as "the confidential and proprietary contact information, including email addresses[] of TLC alumni and other individuals that TLC stores to, inter alia, communicate via several listservs regarding its services and other works"). Thus, to the extent this request could reasonably be construed as an interrogatory disguised as a document request, seeking contact information for *its own alumni*, Plaintiff is not only prohibited from sending interrogatories to a nonparty, but also is already in possession of it.

**MOTION TO QUASH NON-PARTY SUBPOENAS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     To be clear, having attended and taught course at TLC for many, many years, Faraj is frequently in contact with numerous TLC alumni and has their contact information. Requiring Mr. Faraj to produce any document "containing contact information' of any TLC alumni over the past two years is nothing short of harassment.

     **Request No. 6** seeks "documents and correspondence" "related to" "any listserv from

December 19, 2019 to present" that "relate to" Trial Lawyers College regarding: TLC's Marks; GSTLC; any programs that offer trial skills training; and/or seminars or events related to trial skills involving any of the Defendants and/or Lee 'Jody' Amedee III, Hunter Thomas Hillin, Haytham Faraj, and/or Adrian Baca."

     This request is patently overbroad, vague, and ambiguous. It is entirely unclear what documents TLC seeks by this request. The uncertain and potentially unlimited scope of this request imposes an undue burden on Nonparty Faraj. Moreover, it is wholly unclear how any seminars or events "related to skills training" involving Nonparty Faraj and other nonparty attorneys are relevant to the underlying action or proportional to the needs to this case. To the extent this request is decipherable, any relevant documents are in possession of one or both of the parties, and thus, requiring Nonparty Faraj to search for and produce documents which can be obtained, or which are already in possession of the parties, imposes an undue burden on Nonparty Faraj.

     **Request No. 7** seeks "all documents and correspondence related to any of Plaintiff's

Listserv (including, but not limited to, the TLC Alumni listserv), including, but not limited to, any correspondence between [Nonparty Faraj] and the Defendants in this action related to any messages you have sent using TLC's listservs."

**MOTION TO QUASH NON-PARTY SUBPOENAS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

To the extent this request is decipherable, it is facially overbroad in that it seeks, among other things, all "correspondence" between Nonparty Faraj and any Defendant (which can presumably be obtained from said defendant) using TLC's listservs (which TLC itself maintains and controls). Any responsive documents, therefore, are in possession of the parties. It places an undue burden on Nonparty Faraj to require duplicative production of documents which can be obtained from, or are already in the possession of, the parties to the underlying action. Any relevant, responsive documents are presumably in Plaintiff's direct possession. To the extent any responsive information exists and is not already in the possession of one or more of the parties, such information has no reasonable bearing on any of the underlying claims and is not proportional to the needs of the underlying action.

**<u>Request No. 8</u>** seeks "all agreements" Nonparty Faraj has "entered into with any Defendant" from December 19, 2019 to present, regardless of the substance of any such agreement.

This request is overbroad, irrelevant, and to the extent relevant, seeks production of documents that are, by the very nature of the request, in possession of Defendants. Faraj and the Defendants are lawyers who have worked together on many occasions, both representing clients and teaching various courses throughout the country. Faraj's private agreements between Defendants, which potentially include fee sharing agreements between lawyers, are wholly irrelevant to any of TLC's claims in the underlying action. Further, this request potentially invades the attorney-client privilege with respect to any clients for which the fee sharing and/or referral agreements fall within the scope of this request. To the extent any relevant agreements exist, they can and should obtained from Defendants since, by the very nature of this request, one or more defendant is/was a party to any such agreement.

**Request Nos. 9 & 10** seek "documents sufficient to show any payments or monetary gifts" Nonparty Faraj has "received from" or "given to" any Defendant in the underlying action from December 19, 2019 to present.

These requests are patently irrelevant and not reasonably limited in scope. To the extent the documents sought by these requests have any relationship to the underlying action, they are, by their very nature, equally available to Defendants and can therefore more conveniently be obtained through a party.

**Request Nos. 11 & 12** seek all "documents and communications" "related to" "any seminars or events planned at Thunderhead Ranch" or at "any location (including virtual, remote, or online presentations)" that "[Nonparty Faraj] and/or any named Defendant plan to teach, present, instruct or otherwise participate in for the calendar years 2021 and 2022, including but not limited to any contracts, leases, agendas and attendance lists of faculty, students, service providers, and/or other attendees."

This request is so facially overbroad and irrelevant as to constitute harassment. Nonparty Faraj is an attorney who, like every other attorney, regularly "participates" in "seminars" and "events," in order to, at a minimum, fulfill their continuing legal education requirements. Nonparty Faraj also regularly "teaches, presents, and instructs" various "seminars" and "events" throughout the country. Production of any such document is wholly irrelevant and, to the extent relevant, not proportional to the needs of the underlying action.

Although request number 11 is more specific in that it seeks documents related to any seminars or events Nonparty Faraj plans to teach or "otherwise participate in" at a specific location, that is, Thunderhead Ranch, it is equally irrelevant. As the court in the underlying action has explicitly held:

> **This preliminary injunction does not enjoin or restrain Defendants from referencing or stating that classes will be held at Thunderhead Ranch—a ranch owned by the Spence Foundation.**

**MOTION TO QUASH NON-PARTY SUBPOENAS**

Ex. C (emphasis added).

Because the court has explicitly held that Defendants, and presumably Faraj, are free to teach courses at the Thunderhead Ranch, a ranch not owned (and no longer leased) by TLC, any classes Faraj plans (or does not plan) to teach at the ranch are wholly irrelevant to TLC's underlying action and therefore not discoverable.

To the extent any relevant documents exist, Defendants are presumably in possession of such documents and thus, they can and should, if relevant, be obtained through more convenient, less burdensome means.

Finally, just as Plaintiff claims its "database" consists of "confidential and proprietary contact information, including email addresses[] of TLC alumni and other individuals that TLC stores to, *inter alia*, communicate via several listservs regarding its services and other works," Defendants' "agendas and attendance lists of faculty, students, service providers, and/or other attendees" also likely constitute trade secrets. Pursuant to Fed. R. Civ. P. 45(3)(B)(i), the Court may quash or modify a subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information. See Fed. R. Civ. P. 45(3)(B)(i). The party seeking discovery shows a substantial need for the material that cannot otherwise be met without undue hardship. *See* Fed. R. Civ. P. 45(c)(3)(B). Disclosure to a competitor is presumptively more harmful than disclosure to a noncompetitor. See *Echostar Comm'n Corp v. The News Corp. Ltd.*, 180 F.R.D. 391, 395 (D. Colo. 1998). TLC must not be permitted to do an end-run around the rules of discovery in order to obtain privileged and/or proprietary documents of a party from a nonparty, including Nonparty Faraj.

**Request No. 13** seeks "all documents and communications related to the Board of

Directors of either GSTLC or TLC..."

**MOTION TO QUASH NON-PARTY SUBPOENAS**

This request is so facially overbroad and unduly burdensome as to constitute harassment. To the extent any relevant documents exist, they are undoubtedly in possession of one or both of the parties, thus, requiring Nonparty Faraj to gather and produce documents over which he has no control, or which can more readily be obtained from the parties, constitutes an undue burden and must be quashed.

**Request No. 14** seeks "all documents and communications related to the putative Special Meeting of the Board of Directors of the Trial Lawyers College on July 14, 2020[,] as referenced in the attached Exhibit A-1."

This request is overly broad and unduly burdensome. Again, to the extent any relevant documents exist, they can more readily be obtained from one or both of the parties to the underlying action. Thus, requiring unnecessary and duplicative production of documents from Nonparty Faraj constitutes an undue burden and must be quashed.

**Request No. 15** seeks "all documents and communications related to [Nonparty Faraj's] putative" "election to the Board of Directors of the Trial Lawyers College on July 14, 2020."

This request is overly broad in that it is not adequately specify the nature of documents sought. Nor does it appear to be limited to documents relevant to the underlying action or proportional to the needs of the case. In any event, to the extent relevant documents exist, they are in possession of, or can more readily be obtained from, one or both of the parties to the underlying action.

**Request No. 16** seeks "all documents and communications related to your putative
membership on the Board of Directors of the Trial Lawyers College, including but not limited to any activities, operations, decisions or other actions of the Board of Directors of the Trial Lawyers College."

This request is overly broad and unduly burdensome in that appears to encompass all of the above-requested documents, in addition to an unlimited scope of other documents "related to" TLC's own Board of Directors. It is entirely unclear how any documents responsive to this request are in any way relevant to the underlying action or otherwise proportional to the needs of this case. To the extent relevant documents exist, they can more readily be obtained from one or both of the parties to the underlying action.

As is clear from the foregoing, neither TLC nor its attorney, Ralston, took any reasonable steps whatsoever to avoid imposing undue burden on Faraj, the recipient of its facially irrelevant, unreasonable, and patently overbroad subpoenas. Accordingly, the subpoena must be quashed, and sanctions issued, to protect Nonparty Faraj from continued harassment by a plaintiff who continues to unforgivingly abuse its subpoena power.

### D. Rule 45 Sanctions Are Warranted

In addition to an order quashing the subpoena, Nonparty Faraj seeks an award of sanctions against Plaintiff TLC and Attorney Ralston pursuant to Fed. R. Civ. P. 45(d)(1) for their abuse of the discovery process.

A nonparty subject to a subpoena may seek sanctions pursuant to Rule 45(d)(1), which provides:

(d) Protecting a Person Subject to a Subpoena; Enforcement.
(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. **The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.**

**MOTION TO QUASH NON-PARTY SUBPOENAS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(emphasis added); *See also Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 283 (N.D. Cal. 2017).

This Court can, and should, sanction TLC and TLC's Counsel if it determines that it did not attempt to avoid the imposition of burden and expense on Faraj – a non-party.

"In determining whether to impose Rule 45 sanctions, the Court employs a two-step process by which it first determines whether the subpoena at issue imposed an undue burden and, if so, what, if any 'reasonable steps the party who served the subpoena took to avoid imposing such a burden." *Black v. Wrigley*, 2019 WL 1877070, at *7 (S.D. Cal. Apr. 26, 2019) (citing *Molefi v Oppenheimer Trust*, 2007 WL 538547, *2 (E.D.N.Y. Feb. 15, 2007)). In fact, "[i]t has been held that '[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1).'" *Black v. Wrigley*, 2019 WL 2717212, at *5 (S.D. Cal. June 28, 2019) (quoting *CareToLive v. von Eschenbach*, 2008 WL 552431, at 3 (S.D. Ohio Feb. 26, 2008), *quoting Builders Ass'n of Greater Chi. v. City of Chi.*, 215 F.R.D. 550 (N.D. Ill. 2003); *see also Molefi v Oppenheimer Trust*, 2007 WL 538547 (E.D.N.Y. Feb. 15, 2007)) (internal quotation marks omitted).

"Both the language of Rule 45(c)(1) and that of the Ninth Circuit in *C.B.S.* [*United States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir. 1982)] make it clear that sanctions are appropriate if the subpoenaing party fails to take reasonable steps to avoid imposing an undue burden on a third party." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995). Since "sanctions are properly imposed and attorneys' fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash," sanctions against TLC and/or Ralston are appropriate.

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at 9 (S.D.N.Y. Dec. 23, 2003).

In *Black v. Wrigley*, 2019 WL 1877070 (S.D. Cal. April 26, 2019), for example, the court found sanctions under Rule 45(d) were justified where the attorney issuing the subpoena ignored the recipient's request that it be withdrawn, thereby forcing the recipient to expend time and money to prepare and file a motion to quash. As the court explained, "'[S]anctions are properly imposed and attorneys' fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash.'" *Id.* (quoting *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at 9 (S.D.N.Y. Dec. 23, 2003)).

Likewise, in *Molefi v Oppenheimer Trust*, 2007 WL 538547 (E.D.N.Y. Feb. 15, 2007), the court found that undue burden existed "by the mere fact that [the recipient], a non-party, had to, and did, expend time and money contesting a patently frivolous and procedurally flawed subpoena ..." *Id.* at 3. "Here, as discussed above the subpoena served by [the attorney] was facially defective and procedurally flawed and despite [the nonparty recipient]'s efforts requesting that the subpoena be withdrawn, [the attorney] ignored his requests and [the nonparty recipient] was forced to expend time and money to [retain counsel,] prepare and file the instant motion." *Black v. Wrigley*, 2019 WL 1877070, at *7 (S.D. Cal. Apr. 26, 2019). Thus, "[t]here can be little dispute then that the subpoenas here imposed an undue burden on [the nonparty recipient]." *Id.* (quoting *CareToLive v. von Eschenbach*, 2008 WL 552431, at 3 (S.D. Ohio Feb. 26, 2008) (internal quotation marks omitted).

The same is true here. Contrary to the mandate of Rule 45(d)(1), the subpoena was patently overbroad, and TLC and its attorney failed to take any steps whatsoever, let alone any reasonable steps, to avoid imposing an undue burden and expense on Nonparty Faraj (and other similarly situated nonparty attorneys).

**MOTION TO QUASH NON-PARTY SUBPOENAS**

1
2
3
4
5
6

Instead of attempting to resolve the issues outlined in Faraj's objection letter, Ralston simply ignored [Faraj] and proceeded with personal service of the facially defective subpoena." *Black*, 2019 WL 1877070, at *7. By wholesale disregarding Faraj's objections, and personally serving the exact same subpoena Faraj had already objected to, TLC made clear that it had no intention to avoid imposing an undue burden.

7
8
9
10
11
12
13
14
15
16
17

In fact, it appears that TLC and/or Ralston *actively took steps to impose an undue burden and expense on Nonparty Faraj*. For example, TLC's subpoena explicitly and without equivocation states that "[a]ll terms used in the Discovery Requests shall have *the broadest meaning* accorded to them under the Federal Rules of Civil Procedure." Ex. B., p. 1 (emphasis added). Just as the court found in *Molefi*, it appears that "the whole point of the subpoena was to impose such a burden on [Nonparty Faraj]." *Molefi,* 2007 WL 538547, *3. Ralston, having practiced as a litigator for more than 20 years, should have known that the subpoena was improper. His failure to narrowly tailor the subpoenas or take any reasonable steps whatsoever to avoid imposing an undue burden on Nonparty Faraj is clear grounds for sanctions.

18
19
20
21
22
23

"[B]ad faith is a sufficient ground for sanction, but it is not a necessary ground if Rule 45(c)(1) is otherwise violated in good faith. Several district courts have similarly held that bad faith is sufficient but not necessary for Rule 45(c)(1) sanctions." *Mount Hope Church,* 705 F.3d at 428 (citing cases); *see also In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4846522, at 2 [N.D. Cal. Aug. 7, 2012]).

24
25
26
27
28

Ralston's actions here also implicate Rule 26(g) in that the subject subpoena appears to have been imposed for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and was unreasonable and unduly burdensome. Fed. R. Civ. P. 26(g)(1)(B)(ii),(iii). **"Rule**

**MOTION TO QUASH NON-PARTY SUBPOENAS**

26(g)(1)(B) generally requires a party seeking discovery to act (1) consistently with the rule of existing law or with good reason to change the law; (2) not with improper purpose, such as harassing, delaying, or needlessly increasing the cost of litigation; and (3) reasonably, without imposing undue burden or expense when considering the needs of the case." *Duong*, 2020 WL 2041939, at *9 (*citing* Fed. R. Civ. P. 26(g)(1)(B)). "Because [Rule 45(d)(1)] gives 'specific application' to Rule 26(g), it follows that a violation of any of the Rule 26 duties will be relevant to assessing propriety of sanctions under [Rule 45(d)(1)]'s 'undue burden' language." *Id.* (quoting *Mount Hope*, 705 F.3d at 425).

Moreover, having refused to limit the scope of the (re)served subpoena, or engage in any discussion regarding the improper scope of the subpoena before properly serving it on Faraj,[14] Ralston and/or TLC's conduct "not only borders on the type of harassment prohibited by Rule 26(g)(1)(B)(ii), but also lacks the reasonableness required by Rule 26(g)(1)(B)(iii)." *Id.* Because TLC and its attorneys cannot demonstrate that its "actions were, as required by Rule 26, substantially justified," sanctions are warranted for this reason as well. *Duong*, 2020 WL 2041939, at *10 (citing Fed. R. Civ. P. 26(g)(3)). As such, Faraj is entitled to an appropriate sanction which "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3), *see R & R Sails Inc. v. Ins. Co. of State of PA*, 251 F.R.D. 520, 527 (S.D. Cal. 2008); *see also Black v. Wrigley*, 2019 WL 1877070, at *6–8 (S.D. Cal. Apr. 26, 2019).

Thus, "[s]anctions are appropriate here because both Defendants' conduct in pursuing the subpoenas and the subpoenas themselves imposed an undue burden on [Faraj], was inconsistent with existing law and issued for an improper purpose." *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,

---

[14] Indeed, despite agreeing to narrow the scope of the overbroad subpoena as to at least one other nonparty, TLC still commanded production of documents from Faraj, which it had already conceded were inappropriate.

**MOTION TO QUASH NON-PARTY SUBPOENAS**

No. 16-MC-80076-JSC, 2016 WL 7212308, at *3 (N.D. Cal. Dec. 13, 2016). Indeed, the subpoenas appear to be an attempt to "fish around to see if there is a basis for bringing a [trademark and/or trade secret misappropriation] case against [Faraj and other nonparty attorneys, which] is not an appropriate reason for the subpoena." *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 7212308, at *4 (N.D. Cal. Dec. 13, 2016). Because TLC cannot offer a basis for its facially overbroad subpoenas, it is reasonable for this Court to conclude that they "did not result from 'normal advocacy,' and instead, were inconsistent with existing law and for an improper purpose*." Id.* (citing *Legal Voice*, 738 F.3d at 1185; and *Mount Hope Church*, 705 F.3d at 429). Accordingly, sanctions are warranted pursuant to Rule 45(d)(1).

By serving the nonparty subpoenas, Plaintiff imposed an undue burden on Nonparty Faraj, in addition to other nonparties, by "unreasonably and in in bad faith attempting to enforce [its] irrelevant and overbroad Subpoena." *Id.* (citing *Casun Invest*, 2019 U.S. Dist. LEXIS 93971 at *20-21, 2019 WL 2358390, at *7 (imposing Rule 45(d)(1) sanctions where subpoenaing party "acted unreasonably and in bad faith" in attempting to enforce a facially irrelevant, unreasonable, and patently overbroad subpoena).

### E. Type/Amount of Sanctions

When enforcing Rule 45(d)(1), "courts have discretion over the type and degree of sanction imposed." *Mount Hope*, 705 F.3d at 425. "Payment of an opposing party's attorneys' fees is one such permissible sanction." *Duong*, 2020 WL 2041939, at *10 (citing *Mount Hope*, 705 F.3d at 425). Indeed, Rule 45(d)(1) expressly contemplates that the sanctions a court may impose on a party in the circumstances present here may include lost earnings and reasonable attorney's fees. Fed. R. Civ. P. 45(d)(1). Furthermore, the Advisory Committee Notes for Rule 45 provide that "[t]he liability may include the cost of fees to collect

1    attorneys' fees owed as a result of a [misuse of the subpoena]." Fed. R. Civ. P.

2    45(c) advisory committee's notes to 1991 amendment; *see also Anderson v. Dir.,*

3    *Office of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996)

4    (recognizing attorneys' fees for work performed on an application for attorneys'

5    fees and costs); *Bernardi v. Yeutter*, 951 F.2d 971, 976 (9th Cir. 1991) (same);

6    *Black v. Wrigley*, No. 18-CV-2367 GPC-BGS, 2019 WL 1877070, at *3 (S.D. Cal.

7    Apr. 26, 2019) (same).

8         Thus, TLC and Attorney Ralston should be sanctioned for the amount of

9    time Zabetian spent responding to and preparing this motion to quash the

10   subpoena, at his hourly rate of $750. *See* Zabetian Decl. Based on the prevailing

11   rate in the Los Angeles community, these rates are undoubtedly reasonable. *See*

12   *e.g., Duong*, 2020 WL 2041939, at *11; *Klein v. City of Laguna Beach*, 2016 WL

13   9774705, at *7-9 (C.D. Cal. Aug. 25, 2016). Zabetian spent 32.3 hours researching

14   and preparing the instant motion, for a total sanction in the amount of $24,225.00,

15   plus any filing and services fees hereinafter incurred. Zabetian Decl.

16        In the alternative, should the Court find some legitimate discovery need

17   from TLC's subpoena under these circumstances, Faraj requests that the Court

18   order TLC to pay attorneys' fees plus expenses for any matter required for Faraj to

19   retrieve, review for privilege, and produce subpoenaed documents.

20   **IV.   CONCLUSION**

21        For the foregoing reasons, Nonparty Petitioner Haytham Faraj respectfully

22   requests that this Court quash the May 24, 2021, and April 1-3, 2021, subpoenas in

23   their entirety, and sanction TLC and/or its counsel for their blatant abuses of the

24   discovery process as set forth above.

25   Dated: June 30, 2021

26                                          Arash Zabetian
                                            Attorney for Non-Party Movant,
27                                          Haytham Faraj

28

---

35

**MOTION TO QUASH NON-PARTY SUBPOENAS**

**<u>Exhibit List</u>:**

**Faraj Declaration**

**Zabetian Declaration**

**Ex. A:** April 1-3, 2021 Subpoena

**Ex. B:** May 24, 2021 Subpoena

**Ex. C:** Order Granting in Part and Denying in Part TLC's Motion for Preliminary Injunction in the Underlying Action (Dkt. 46)

**Ex. D:** Objection Letter

**Ex. E:** Substantially similar subpoenas issued to similarly situated non-party attorneys

**EX. F:** Email chain re: objections

**Ex. G:** Email chain re: meet and confer

**MOTION TO QUASH NON-PARTY SUBPOENAS**

**PROOF OF SERVICE**

**CASE NAME:     Mondragon v. City of Anaheim**
**CASE NUMBER: SACV 16-0834-DOC (JCGx)**

State of California         )
County of Los Angeles       )         ss:

At the time of service I was over 18 years of age and not a party to this action.  My business address 6320 Canoga Avenue, 15th Floor, Woodland Hills, CA 91367.  The fax number or electronic notification address from which I served the documents is 323.477.2424 or arash@zabetianlaw.com

On  6/30/2021, I served the following documents: **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA OF HAYTHAM FARAJ AND RELATED FILINGS**

I served the documents on the person or persons below, as follows:

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

_____     BY PERSONAL SERVICE.  I personally delivered the documents to the persons at the addresses listed above.  (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

_____     BY UNITED STATES MAIL.  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Santa Monica, California.

_____     BY OVERNIGHT DELIVERY.  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

_____     BY FAX TRANSMISSION.  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed above.  No error was reported by the fax machine that I used.   A copy of the record of the fax transmission, which I printed out, is attached.

XX     BY ELECTRONIC SERVICE.  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

_____     (State)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

XX     (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
ARASH ZABETIAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**SERVICE LIST**</u>

<u>Attorneys for Plaintiff The Trial Lawyers College</u>

**Matthew R. Slaughter**
**Stephanie M. Poucher**
Phelps Dunbar LLP
Canal Street
365 Canal Street, Suite 2000
New Orleans, LA 70130
Direct: 504-584-9237
Fax: 504-568-9130
Email: matthew.slaughter@phelps.com
        stephanie.poucher@phelps.com


<u>Attorneys for Defendants</u>
**Beth J. Kushner**
von Briesen & Roper, s.c.
411 East Wisconsin Avenue
Suite 1000
Milwaukee, WI 53202
bkushner@vonbriesen.com