

**FILED**

1:59 pm, 12/16/21

**U.S. Magistrate Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

THE TRIAL LAWYERS COLLEGE,  )
                            )
        Plaintiff,          )
                            )        Civil Case No. 0:21-mc-00213
        v.                  )
                            )
GERRY SPENCE TRIAL LAWYERS  )
COLLEGE AT THUNDERHEAD      )
RANCH, ET AL,               )
                            )
        Defendants.         )

**ORDER DENYING NON-PARTY HAYTHAM FARAJ'S MOTION TO QUASH**

THIS MATTER comes before the Court on non-party Haytham Faraj's Motion to Quash.

**BACKGROUND**

Mr. Haytham Faraj filed a Motion to Quash a subpoena issued to him, originally in the

Central District of California. The Motion to Quash was filed in California on July 13, 2021. The

case was transferred to the District of Wyoming in August 2021. The subpoenas were issued in

connection with a civil action pending in the District of Wyoming, *The Trial Lawyers College v.*

*Gerry Spence Trial Lawyers College at Thunderhead Ranch, et al*., Case No. 20-cv-0080. The

case was consolidated with other cases pertaining to non-party subpoena recipients as there are

common questions of law and fact. The other actions include 21-mc-00181, 21-mc-00192, 21-

mc-00208, and 21-mc-00213.

The underlying case, *The Trial Lawyers College v. Gerry Spence Trial Lawyers College*

*at Thunderhead Ranch, et al*., (now 'underlying case') is a trademark infringement and trade

secret misappropriation case. While the underlying case is extensive, with almost 300 docket

items at present and no end in sight, only a brief summary of the facts will be presented here.

1

Plaintiff the Trial Lawyer's College ("TLC") is a nonprofit corporation that provides litigation training to lawyers. [ECF Doc. 1]. In 2012, TLC received two trademarks: one for the 'Trial Lawyers College' and one for the emblem of a cloud with a lightning bolt. *Id*. In early 2020, following an internal dispute, there was a severing of the leadership of TLC into the current Plaintiffs and Defendants, calling themselves the 'Gerry Spence Trial Lawyers College at Thunderhead Ranch.' [ECF Doc. 1; ECF Doc. 3]. Shortly after this severing, the Spence Foundation ended TLC's lease at the Thunderhead Ranch and filed a dissolution action. TLC then filed its own suit, the underlying case, on May 13, 2020. The underlying case alleges that Defendants violated trademark laws by infringing on TLC trademarks and participating in unfair competition. [ECF Doc. 1; ECF Doc. 3].

 Mr. Faraj's connection to the action came through the third-party complaint, where TLC alleged that Mr. Faraj, as well as Adrian Baca, Lee Amadee III, Hunter Hillin, and Sylvia Torres-Guillen were nominated and elected to a new board created by the Gerry Spence group that continues to hold itself out as the valid TLC group. [ECF Doc. 1; ECF Doc. 3].

After various unsuccessful attempts to receive discovery from parties, TLC issued an initial subpoena duces tecum to Mr. Faraj. 1:20-cv-00080 Civil Docket Sheet. Ultimately, and allegedly after threatening Mr. Faraj's young nanny with jail time, a subpoena was left at the home of Mr. Faraj on April 3, 2021. Mr. Faraj claims that the subpoena was left on top of a delivered package at the front door and TLC claims that it was left with an unidentified woman at the home. [ECF Doc. 1; ECF Doc. 3]. Mr. Faraj then objected to the subpoena, both to its service and its substantive requests. After the objections were received, TLC issued another subpoena on April 16, 2021, with a new date of compliance. Three attempts were made to personally serve Mr. Faraj at his home, to no avail. TLC then reached out via email to Mr. Faraj

on April 22, 2021 to ask if he would accept service by email. Arash Zabetian, Mr. Faraj's

counsel, responded to TLC directly with a reprimanding email about direct communication with

his client. It is unclear if TLC had knowledge of Mr. Faraj's representation at the time of the

email. On April 26, 2021, Mr. Zabetian sent an email to TLC counsel, Christopher Ralston,

reasserting his objections to the subpoena and agreeing to email service on the condition that

TLC post a provided statement to the 'F Warrior' Facebook page and the TLC listserv. The

statement suggested by Mr. Faraj and Mr. Zabetian would have been a characterization of TLC's

behavior as bullying and unlawful and would have issued an apology to the entire listserv, as

well as a public apology to Mr. Faraj. TLC did not respond and assumed that Mr. Zabetian's

response was a denial of service. [ECF Doc. 3]. TLC personally served a second subpoena on

Mr. Faraj on May 24, 2021. Both subpoenas requested information in sixteen different

categories. The first subpoena requested production within fourteen days. The second subpoena

requested production within four of the day it was actually served upon Mr. Faraj.

　　　Both Mr. Faraj and TLC have different stories for the interactions around and following

the subpoenas. Mr. Faraj claims that "TLC made no attempt whatsoever to limit the scope of its

facially overbroad (and improperly served) subpoena before proceeding to personally serve a

subpoena seeking the exact same facially overbroad series of documents on Faraj." [ECF Doc. 1

at 11]. TLC alleges that "this motion [to quash] follows on the heels of weeks during which

counsel for TLC made every accommodation with Faraj's counsel pursuant to Local Rule 37-1."

[ECF. Doc. 3 at 7]. Regardless of these vying recollections of events, the record itself provides

some verifiable actions.

　　　On June 15, 2021, an attorney for TLC reached out to Mr. Zabetian to schedule a

discovery conference to discuss Mr. Faraj's failure to respond to the second subpoena and his

objections to the first subpoena. Mr. Zabetian responded that he would not be able to meet until the first of July due to his trial calendar. In response, TLC's counsel offered to make themselves available the following day or at any time convenient for him in the week before the trial. TLC counsel further noted that by failing to timely object to the second subpoena, Mr. Faraj had waived any objections. TLC counsel clarified that it was not seeking documents that contained communications with TLC or communications posted on the TLC listserv. Further, TLC counsel stated the relevance of the documents they were seeking, both with explanation and case law, and offered to work with Mr. Faraj and his counsel to agree upon a reasonable production deadline. [ECF Doc. 1; ECF Doc. 3].

After some additional convoluted discussion, a July 1 discovery conference date was set. However, on June 30, the present Motion to Quash was filed by Mr. Faraj. By email to TLC, he claimed that he was still willing to participate in the conference but would not attend blind and argued that TLC should have further limited their requests for discussion for the conference and he would attend if a list of narrowed requests was sent. TLC refused to narrow their requests for discussion. TLC then could not get in touch with Mr. Zabetian for their scheduled discovery conference. [ECF Doc. 3].

The parties have undergone weeks of discussions amongst themselves with intermittent discovery conferences and status conferences. At the status conference held on October 21, 2021 in front of Magistrate Judge Carman, Mr. Faraj was ordered to produce all of his uncontested discovery by November 17, 2021, and his counsel was ordered to stay in contact with Plaintiff's counsel regarding discovery until that deadline. [ECF Doc. 37]. At the status conference held on November 17, 2021, it was discovered that Mr. Faraj had produced four documents to TLC, but was contesting email production, arguing that searching his email was an undue burden. [ECF

Doc. 38]. This same argument was advanced by Mr. Zabetian at the October 21 status conference

and the Court found that other parties had been able to produce these documents and suggested

there are a number of search terms that could be used to narrow the search for requested

discovery. At a status conference held on December 14, 2021, the Court received an update from

Plaintiffs that there had been no further communication between Mr. Faraj and his counsel and

TLC and their counsel. Mr. Zabetian failed to attend the status conference.

## MOTION TO QUASH

In the Motion to Quash, Mr. Faraj puts forward a number of allegations as to the

impropriety of the subpoenas served on him. Mr. Faraj alleges that the first subpoena, served

April 3, 2021 and left at his front door, was improperly served as it was not personal service. Mr.

Faraj alleges that the second subpoena was incorrect because it was facially identical to the first

subpoena, which he had already objected to, and that it left an unreasonable amount of time for

compliance. [ECF Doc. 1].

Substantively, Mr. Faraj argues that the subpoenas are overly broad and present an undue

burden on him to comply. He claims that the information sought is irrelevant, duplicative and

available from parties to the case, sought for an improper purpose, requests trade secrets, and the

information is privileged. Further, Mr. Faraj would like sanctions from Plaintiffs and their

counsel in the amount of $24,225 in fees, or if sanctions are denied, he is seeking cost-shifting

for the cost of compliance with the subpoena. [ECF Doc. 1].

## OPPOSITION TO MOTION TO QUASH

Plaintiff TLC filed a Response in Opposition to the Motion to Quash, refuting Mr. Faraj's

allegations and alleging affirmative defenses against the Motion to Quash. In defense of the

subpoenas, TLC argues that the lack of personal service for the first subpoena was proper in the

District of California, that there was no attempt to negotiate a longer compliance date despite an

offer by counsel to do so for the second subpoena, and that Mr. Faraj is incorrectly requesting

that his objections to the first subpoena be upheld but that the first subpoena itself be found

invalid. [ECF Doc. 3].

Plaintiffs allege that the Motion to Quash was untimely, resulting in a waiver of all

objections to the subpoena. TLC also alleges that the Motion to Quash was meritless as the

subpoena was not overly broad and it did not place an undue burden on Mr. Faraj, as the

documents are necessary, and TLC previously attempted to get the documents from parties to the

case, but that discovery was evasive or inadequate. TLC further alleges that the Motion to Quash

was filed without conferral as TLC requested a meeting and Mr. Faraj failed to participate in any

conference, despite local rules. TLC also refutes that sanctions are proper. [ECF Doc. 3].

## LEGAL ANALYSIS

Federal Rule of Civil Procedure 45 governs subpoenas issued to third parties. Fed. R.

Civ. P. 45. "Rule 45 permits a party to issue a subpoena directing a non-party to produce

designated documents, electronically stored information, or tangible things in that person's

possession." *Little v. JB Pritzker for Governor*, 2020 WL 1939358 *1 (N.D. Ill. 2020). When a

non-party receives a subpoena, they have three options. *Duong v. Groundhog Enterprises, Inc.*,

2020 WL 2041939 *5 (C.D. Cali. 2020). One, they may comply; two, under Rule 45(d)(2)(B),

they may object; or three, they may move to quash or modify the subpoena per Rule 45(d)(3). *Id*.

However, the power of a subpoena is not unlimited. Rule 45 mandates that issuers of

subpoenas must "take reasonable steps to avoid imposing undue burden or expense on a person

subject to a subpoena." Fed. R. Civ. P. 45. Non-parties must be protected from significant

expense when complying with a subpoena. *Id*. If the issuer fails to take reasonable steps to

protect the non-party from significant expense, the court must sanction the issuer. Fed. R. Civ. P.

45. The Court *must* quash a subpoena if there is no reasonable time to comply, it is beyond the

geographical limits set in Rule 45(c), disclosure would run afoul of a privilege, or compliance

places an undue burden on the non-party. Fed. R. Civ. P. 45(d)(3)(A). The Court *may* quash a

subpoena if it discloses trade secrets. Fed. R. Civ. P. 45(d)(3)(B). The court may also take

additional actions like ordering production, modifying the subpoena, and mandating

compensation for the subpoenaed party. Fed. R. Civ. P. 26.

 Rule 26(g)(1)(B) of the Federal Rules of Civil Procedure is also relevant to all discovery,

including nonparty subpoenas. *Duong*, 2020 WL 2041939 at *9.

> Rule 26(g)(1)(B) generally requires a party seeking discovery to act 1)
> consistently with the rule of existing law or with good reason to change the law;
> 2) not with improper purpose, such as harassing, delaying, or needlessly
> increasing the cost of litigation; and 3) reasonably, without imposing undue
> burden or expense when considering the needs of the case.

*Id.*

 When analyzing a motion to quash, the Court must balance "the burden imposed on the

third parties subject to the subpoena with the relevance of the information sought to the claims or

defenses at issue, the breadth of the discovery requests, and the litigant's need for information."

*Wahoo International, Inc. v. Phix Doctor, Inc*., 2014 WL 3573400 *5 (S.D. Cali. 2014). *See also*

*Soto v. Castlerock Farming and Transport, Inc.,* 282 FRD 492, 594 (E. D. Cali 2012) (finding an

undue burden when burden outweighs value of information to issuing party, considering factors

like relevance, need of the party for information, breadth of information requested, time period

covered by request, and particularity of description of documents).

 While nonparties must be protected from undue burden and expense, they are subject to

the same scope of discovery as a party under Rule 34. *Moon v. SCP Pool Corp.,* 232 FRD 633,

636 (C.D. Cali 2005). The party filing the Motion to Quash holds the burden of proof and must demonstrate that "compliance with the subpoena would be unreasonable and oppressive." *Williams v. City of Dallas*, 178 FRD 103, 109 (N.D. Tex. 1998). This determination is made on a case-by-case basis. *Id*.

As there are numerous, relevant legal issues in this Motion to Quash and the Opposition to the Motion to Quash, they will each be handled in turn by this Court.

### Propriety of April 3, 2021 Subpoena Service

Rule 45(b)(1) informs litigants that serving a subpoena requires that a copy be delivered to the named person, and if the person must attend a deposition or other legal event in person, the issuing party must tender fees for one day and fund the mileage allowed by law. Fed. R. Civ. P. 45. "Most courts have interpreted the rule to require personal service." *Casun Invest. AG v. Ponder*, 2019 WL 2358390 *3 (D. Nevada 2019) However, there is a growing trend to allow substitute methods of service, "so long as the method of service is reasonably calculated to provide timely, fair notice and an opportunity to object or file a motion to quash." *Id*. If there is evidence of earnest attempts at personal service, courts are more likely to grant alternative methods. *Id. See also Toni Brattin & Co., Inc. v. Mosaic International, LLC*, 2015 WL 1844056 *3 (ND Cali 2015) (finding that the Rules of Civil Procedure should not be used as a "shield to evade service").

The Ninth Circuit and the District of California have both allowed reasonable alternative means of service as long as the goals of service are upheld. "Service by certified mail comports with due process as it is reasonably calculated under the circumstances to provide respondents with both notice and an opportunity to present objections." *Toni Brattin & Co., Inc.*, 2015 WL 1844056 at *4; *see also Dhillon v. Does 1-10*, 2013 WL 5367783 *2 (N.D. Cali 2013) ("Google

may serve the entitles and persons using any reasonable means, including written notice sent to the entity's or person's last known address, transmitted either by first-class mail or overnight service."); *Green v. Baca*, 2005 WL 283361 (C.D. Cali 2005); *Smash Pictures v. Does 1-265*, 2012 WL 761936 (E.D. Cali 2012).

The present case does not find a matching fact pattern in other case law, but the cases cited by both parties are illuminative, though not all of equal persuasion. Mr. Faraj cited *FTS v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980) and *Doe v. Hersemann*, 155 F.R.D. 630 (N.D. Indiana 1994) in support of his argument that subpoenas require personal service. However, both of these cases are from different circuits and are older than those cases cited by TLC. TLC cites several more recent cases from the District of California that demonstrate alternative methods of personal service are allowed if they are reasonably calculated and meet the requirements of notice and an opportunity to object. *Dhillon*, 2013 WL 5367783; *Green*, 2005 WL 283361. While the cases cited by TLC only explicitly contemplate certified mail as an alternative method of service, the rationale behind the decisions can inform our decision today.

While TLC's April 3, 2021 subpoena service would not qualify as personal service, nor service through certified mail, it does comport with the requirements set forth by the rule. Because Mr. Faraj did timely make objections to the subpoena, it is clear he received actual notice of the subpoena and he had time to make objections. Therefore, the Court finds that the April 3 subpoena was reasonably served on Mr. Faraj. Though it should be noted that there is no evidence submitted to the Court about attempts at service at the beginning of April 2021.

   a.  **Impact of written objections**

Mr. Faraj's objections to the April 3 subpoena were timely made. *See Allender v. Raytheon Aircraft Co.*, 220 FRD 661, 665 (D. Kan. 2004) (finding timeliness if within the time of compliance in the subpoena). His objections were sent April 13, within the date of compliance requested by the subpoena. In his objections, Mr. Faraj objected to both the service itself and the substantive requests in the subpoena. [ECF Doc. 1]. In response to these objections, TLC began attempts to re-serve the subpoena, which would amend any issues with the service of the first subpoena (as explained below). [ECF Doc. 1; ECF Doc. 3]. Additionally, TLC attempted to meet-and-confer with Mr. Faraj to discuss his substantive objections to the subpoena, and in doing so, they further limited the information that they were requesting. According to Rule 45, objections allow the issuing party to file a motion to compel production, but production must only occur with a court order. Rule 45(d)(2). However, these objections do not quash the subpoena.

### b.  Impact of new subpoena on April 3 subpoena

Mr. Faraj notes that the second subpoena that was served on him came after his objections to the first subpoena, both on substantive grounds and on improper service. It appears from the record that upon receiving Mr. Faraj's objections, TLC began to almost immediately attempt re-service on Mr. Faraj. Mr. Faraj argues this second service of an almost identical subpoena was improper. However, "[Mr. Faraj] seems to suggest that the rule provides a party with a single shot at issuing a subpoena correctly and that any procedural defect will forever foreclose the party from correcting the subpoena and obtaining the information." *Bonzani v. Shinseki*, 2014 WL 2521849 *3-4 (E.D. Cali 2014). "There is simply no basis for the proposition that a defect in a subpoena cannot be corrected by reissuing a subpoena." *Id*. Therefore, even if the April 3

subpoena had been improperly served, it could have been corrected by this later service of the same subpoena.

### Time of compliance for May 24, 2021 subpoena

"A court must quash or modify a subpoena that fails to allow a reasonable time to comply." *Bonzani*, 2014 WL 2521849 at *4. Reasonable time for compliance is not defined in the Rule itself, but courts have generally interpreted timeliness as the time set for compliance in the subpoena. *Allender v. Raytheon Aircraft Co.*, 220 FRD 661, 665 (D. Kan. 2004). "Service of subpoenas at least ten days before a deposition or production is customary, but not mandatory. While ordinarily a response time of fourteen days or more would appear reasonable, Rule 45 specifically contemplates circumstances where the response time would be less." *Bonzani*, 2014 WL 2521849 at *4. *See also San Fran Bay Area Rapid Transit Dist. v. Spencer,* 2006 US Dist. LEXIS 81677 (N.D. Cali 2006) (finding a subpoena reasonable with only seven days until production demanded as it requested limited production).

The May 24 subpoena that was served on Mr. Faraj asked for the same sixteen categories of documents as the April 3 subpoena, but the time of compliance was only four days. [ECF Doc. 3]. In our present case, we cannot say that TLC demands a very limited number of documents and four days is a very small window in which to demand production of sixteen categories. However, Mr. Faraj had notice of this demanded production with receipt of the first subpoena at the beginning of April. Based off the discourse between TLC counsel and Mr. Faraj's counsel, it was clear that TLC was still seeking access to the same information and would continue pursuing that information. It was also clear that Mr. Faraj knew that TLC was seeking to issue a second subpoena to him based off the ongoing email correspondence over the issue. Additionally, TLC presents evidence that they attempted to serve Mr. Faraj personally multiple times and were

11

unable to do so, shortening the amount of time available for compliance. And further, TLC offered to work with Mr. Faraj to come up with 'reasonable production date.' Courts have found that the absence of a request by the responding party to extend the time period is also a factor in determining reasonableness. *Bonzani*, 2014 WL 2521849 at *4. Further, the Court notes that it was proper for TLC to consider Mr. Zabetian's April 26th email with conditions to be a denial of service. The message that Mr. Faraj and Mr. Zabetian demanded TLC and its lawyers to post to the 'F Warrior page' and the TLC listserv was improper and has no support in the law. So while the Court notes that the time for compliance with the May 23 subpoena was brief, it was not so unreasonable as to demand the subpoena to be quashed because Mr. Faraj had notice of the requested documents a month before production was due.

### Substantive Subpoena Objections

As previously noted, subpoenas must comply with the categories of Rule 26, as well as Rule 45. *Wahoo International, Inc.*, 2014 WL 3573400 at *2. This means subpoenas must be consistent with existing law, not for an improper purpose, and reasonably done, without undue burden or expense. *Duong.*, 2020 WL 2041939 at *6. 'Consistent with existing law' has been interpreted to mean compliance with Rule 45 procedures. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012); *Black v. Wrigley*, 2019 WL 1877070 *2 (S.D. Cali, 2019). This means that information must be relevant under a reasonable legal theory. *Mount Hope Church*, 705 F.3d at 428. An example of improper purpose can be found in *Molefi*, where the issuing party sent a subpoena to a nonparty, and then abandoned the legal matter. *Molefi v. Oppenheimer Trust*, 2007 WL 538547 *4 (EDNY 2007). The Court there found that the subpoena had been issued for the sole purpose of presenting an undue burden on the nonparty and this purpose was improper. *Id*. Fishing expeditions for information are also considered

12

improper purpose for a nonparty subpoena. *Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.*, 2016 WL 7212308 *4 (N.D. Cali 2016).

The subpoenas issued in the present case were compliant with Rule 45 procedures as they contained all the necessary information, were properly served, and were not for an improper purpose. The information sought by TLC is relevant to the underlying case. It is clear that all of the requests for production are tailored to the issues at hand, and to Mr. Faraj's alleged involvement with the parties. The subpoenas also did not constitute a fishing expedition[1].

The final Rule 26 category of undue burden or expense requires the most discussion.

In evaluating whether a subpoena is unduly burdensome, the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information…The court is required to limit the extent of discovery otherwise allowed if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issue (internal citations omitted).

*Wahoo International, Inc.,* 2014 WL 3573400 at *2. The fact that someone is a nonparty is also a factor to be considered when determining undue burden. *Little*, 2020 WL 1939358 at *2. "The court should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party." *Id.*

Breadth of the request. Courts have found that requests for production are overly broad when they have very few temporal or subject limitations. For example, the Court in *Moon* found

---

[1] Cases on discovery repeatedly use the term "fishing expedition" in a derogatory manner to indicate that the party is simply casting about with no realistic expectation of what they are seeking. Clearly this term has developed in the law by those who do not practice the art of fishing. As any angler will attest, ones does not simply cast about, but rather uses all available information to determine the likely location of the evasive fish and the most efficient manner to bring it to net. A fisherman or fisherwoman knows what they seek and the best location in which to seek it. The law would benefit if litigants would practice similar focus in their discovery efforts.

the subpoena to be overly broad when it requested documents from a time period over ten years and did not limit it to relevant sales. *Moon v. SCP Pool Corp.,* 232 FRD 633, 637-38 (C.D. Cali 2005). *See also Williams v. City of Dallas*, 178 FRD 103, 110 (N.D. Tex. 1998) (finding a subpoena to be overly broad when "it is limited neither by reasonable restrictions on time nor by particular documentary descriptions").

The Court has examined all sixteen production requests asked of Mr. Faraj in the subpoena and does not find that they are overly broad. All the requests are limited by either time or subject, sometimes both. All the requests are also limited to relevant parties to this litigation, and none of the requests extend backward past December 2019.

Relevance of the request. "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon,* 232 F.R.D. at 636. The Court finds that all sixteen production requests are also relevant. Mr. Faraj's involvement in this case comes through his election to a new board in competition with the original TLC board. All the production requests inquire as to the surrounding relationships and activities around that election and his involvement with TLC, the Defendants, and their new organizations. Especially given the nuances of the claims involved in this action, the Court cannot say the requests are irrelevant.

Duplicative requests. In analyzing a possible undue burden, courts may examine if information requested from a non-party is more readily available from a party. *Duong*, 2020 WL 2041939 at *7. It is preferable for information to come from parties to a litigation than nonparties. *Soto,* 282 F.R.D. at 505. "Consequently, where plaintiffs have not shown they attempted to obtain documents from the defendant in the action prior to seeking the documents from a non-party, a subpoena places an undue burden on a non-party." *Id*.  Plaintiff here can

14

show that documents were requested from parties to the litigation before non-parties. The underlying suit was filed March 13, 2020. The subpoena for Mr. Faraj was not attempted until April 2021. Not only is this delay indicative that documents were sought from parties first, but the record also supports that fact. [20-cv-0080 Docket Sheet]. Further, TLC limited their requests from Mr. Faraj so as to keep him from producing duplicative information that they had already acquired.

Trade secrets. Courts may quash a subpoena when it requests the disclosure of trade secrets. Fed. R. Civ. P. 45. "Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 395 (D. Colo. 1998). Mr. Faraj argues that the agendas and attendance lists sought by Plaintiffs likely constitute trade secrets as the contact information of the individuals is confidential information, and that ordering the production of this information would allow TLC to do an "end-round around the rules of discovery." [ECF Doc. 1 at 27]. While Mr. Faraj put forward this argument in only a small, undeveloped section, the Court has a hard time understanding the basis of this claim. The underlying suit here is a trademark infringement case, so it is logical that some of the discoverable information has to do with the potential use of copyrighted material or unfair competition. The Court is unconvinced that trade secrets are sufficient grounds to quash this subpoena.

Privilege. Rules 26 and 45 exempt privileged documents from production if no waiver or exemption exists. However, the existence of a privilege does not create an undue burden automatically. "For privileges can be waived, and even when not waived, there is often a balancing of interests before resolution of a dispute." *Id.* Whether information is under the protection of a privilege is a related follow-on issue to the subpoena, not one that should be

included in the original undue burden analysis. *Id*. at 428. Most critically here, the Wyoming court already issued an order on June 30, 2021 pertaining to this issue. The order stated that no privilege exists between the Defendants and other subpoena recipients through their common board membership. [ECF Doc. 204]. Therefore, this subpoena cannot be quashed due to issues of privilege.

### Motion to Quash Objections

In TLC's opposition to the Motion to Quash, Plaintiff put forward additional defenses about the propriety of the motion itself. TLC argued that the motion was not timely, and that Mr. Faraj failed to meet his requirement to meet-and-confer about the motion. [ECF Doc. 3].

Objections to a motion to quash must be made within fourteen days or by the date of compliance, whichever is less. FRCP 45(d)(2). Motions to quash must be timely, which most courts have interpreted to mean that they must be filed before the date of compliance in the subpoena. *Odyssey Reinsurance Co. v. Nagby*, 2018 WL 1963665 *2 (SD Cali 2018); *Santiago v. Hawaii*, 2017 WL 11448442 *1 (D. Hawaii 2017). *See also Innomed Labs v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) ("It is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition").

Generally, if a party fails to make timely objections to a Rule 45 subpoena, the court is required to find that the objections have been waived. *Moon.,* 232 FRD at 636. However, with unusual circumstances or good cause, lack of timeliness will not bar consideration of objections. *Odyssey Reinsurance Co.*, 2018 WL 1963665 at *1. Unusual circumstances can be found "where, for instance, the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith." *Moon.,* 232 F.R.D. at 636. The Court finds there are no unusual circumstances present in this case because the

subpoena was not over-broad on its face, and it did not exceed the bounds of fair discovery. All production requests were limited in time and subject and are relevant to the underlying case. Good cause is identified on an individual case-by-case basis, and generally means that the delay to file was justified. *Odyssey Reinsurance Co.*, 2018 WL 1963665 at *3 (finding no good cause when there was no explanation for a delay in filing a motion to quash). The Court does not find good cause in the present case because Mr. Faraj's Motion to Quash was filed untimely with no justification for that delay, and because the motion was filed after discussions with TLC to limit the scope of this production were abandoned.

Discovery motions also require the conferral of parties before filing. *SL v. Upland Unified School District*, 2019 WL 8163805 *2 (CD Cali 2019). According to local rule 37-1, when one party requests a conference with the other party, they have ten days in which to meet. *Id*.

Mr. Zabetian sent objections to the initial subpoena on April 13, 2021. [ECF Doc. 1, Exhibit D]. Upon receiving the objections, TLC began to attempt to re-serve Mr. Faraj to correct the personal service objection. During this time, Mr. Zabetian refused service of a second subpoena unless TLC posted an inappropriate public apology. TLC did not respond to that demand. [ECF Doc. 1, Exhibit F]. After a second subpoena that was ultimately served on Mr. Faraj on May 25, 2021, Ms. Poucher, an attorney for TLC, reached out to Mr. Zabetian to schedule a conference call to discuss Mr. Faraj's objections to the subpoena. This email was sent on June 15, 2021. [ECF Doc. 1, Exhibit G]. Mr. Faraj then informed TLC counsel that he would be unavailable until July 1 or 2. Ms. Poucher again responded, saying,

> In an effort to accommodate your upcoming trial, I am happy to make time in my schedule to speak with you any time tomorrow, Friday, June 18, 2021. Please let me know what time would work best with your schedule, and I will rearrange my schedule accordingly. If speaking tomorrow also does not work with

your schedule, I can make myself available to you any day next week, either before your trial begins in the morning or after the court adjourns for the day. Please let me know, and we can make arrangements.

*Id*. Mr. Zabetian's response email denied time in his schedule until July and expressed confusion for the rush in conference. Ms. Poucher pointed to the local rules requiring a conference within ten days of a written request for one. She also added that she would be happy to speak to Beth Kushner instead if that would improve scheduling. Mr. Zabetian continued to refuse to participate in a meet-and-confer without more details on the substance of the meeting, despite the scheduling of a call for July 1, 2021 at one of Mr. Zabetian's requested times. Ultimately, TLC was unable to get in touch with Mr. Zabetian for their scheduled call.

This behavior by Mr. Zabetian and Mr. Faraj is in direct violation of Local Rule 37-1, which requires parties to meet-and-confer within ten days of a request to do so. This is ultimately done to keep the Court's unnecessary involvement to a minimum in issues that could be resolved between the parties. That is clearly not what unfolded here, though the Court's involvement could potentially have been lessened if the appropriate meet-and-confer had taken place.

### Sanctions

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). Additionally, because Rule 26(g) is given specific application in Rule 45, any violation of Rule 26 duties can also give rise to sanctions. *Duong*, 2020 WL 2041939 at *9. The Ninth Circuit, however, has rejected the idea that everything responding to an illegitimate subpoena is an undue burden. *Id*. at 6. In the Ninth Circuit, sanctions are only allowed with an undue burden caused by an oppressive subpoena, bad faith, or a facially

defective subpoena. *Id*. "Bad faith is a sufficient ground for sanctions, but it is not a necessary ground if Rule 45(c)(1) is otherwise violated in good faith." *Mount Hope Church*, 705 F.3d at 428. However, bad faith is necessary if all other compliance is met. *Id*. Additionally, the Court agrees that Rule 45 places more emphasis on the burden of the receiving party than on the issuing party's motives. *Id*. at 428-29.

"The Ninth Circuit established the test for when Rule 45(d)(1) sanctions are permitted in *Mount Hope Church v. Bash Back*." *Duong*, 2020 WL 2041939 at *6. "In determining whether to impose Rule 45 sanctions, the Court employs a two-step process by which it first determines whether the subpoena at issue imposed an undue burden and, if so, what, if any reasonable steps that party who served the subpoena took to avoid imposing a burden." *Black*, 2019 WL 1877070 at *7.

"When enforcing Rule 45(d)(1), courts have discretion over the type and degree of sanctions imposed." *Duong*, 2020 WL 2041939 at *10. Simply losing a motion to compel does not justify sanctions, nor does an overbroad subpoena. *Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.*, 2016 WL 7212308 *3 (N.D. Cali 2016). Overbreadth can be the result of normal advocacy, which should not invoke penalties. *Id*.

> Given the importance of advocacy, our adversarial system encourages lawyers to act with zeal for a client's cause. But zeal cannot go unchecked, and many mechanisms, including sanctions, exist to ensure that advocacy supports instead of erodes justice. Yet, while these mechanisms serve a vital purpose, their overuse may chill an attorney's enthusiasm and creativity, in turn impeding both a tribunal's decision-making process and the creation of new case law. For these reasons, sanctions should not result from normal advocacy.

*Mount Hope Church*, 705 F.3d at 426.

The fact that a subpoenaed individual is a nonparty is very relevant to the determination of sanctions, as the sanctions provision of Rule 45 was mostly intended to protect nonparties

from misuse of subpoenas. *Id*. at 429. However, as stated by the Ninth Circuit, "[w]hile we are sensitive to the imposition of large discovery costs on non-parties and recognize the special need to protect them, we will not read undue burden differently just because a nonparty is subpoenaed." *Id*.

Mr. Faraj requested attorney's fees from TLC and their counsel, or if attorney's fees are denied, he requested that the cost of complying with the subpoenas be shifted to TLC.

"A party seeking attorneys' fees must provide satisfactory evidence that the requested rates are in line with those prevailing in the community." *Duong*, 2020 WL 2041939 at *10. The forum where the court is located is the relevant community. *Id*. If the requesting individual fails to establish the reasonableness of its requested fees, the Court may determine reasonable hourly rates based off its own knowledge and experience. *Id*. The hours must also be reasonably necessary. *Id*. Reasonable out-of-pocket costs that are normally charged to clients are recoverable; but routine overhead office costs are not. *Molefi*, 2007 WL 538547 at *8.

An award of attorneys' fees can be an appropriate sanction. Using the two-step inquiry put forward in *Mount Hope Church v. Bash Back*, this Court finds that attorney fees are not appropriate here as sanctions are not appropriate. First, the Court examined if an undue burden was placed upon Mr. Faraj. While it cannot be said that the work required of Mr. Faraj in complying with this subpoena is *de minimus*, it also cannot be said to present an undue burden. As analyzed above, the subpoena is not overly broad, it is relevant, it is not for an improper purpose, and it does not encroach on issues of trade secrets or privilege. While it is not necessary to continue the analysis past the first step, the Court will note that TLC took multiple reasonable steps to avoid imposing a burden, including attempting a meet-and-confer to discuss objections to the subpoena and further limiting the requests for production. It is noted by the Court that the

alleged behavior of the process server in threatening jail time on the nanny was not proper or approved by this Court, but the allegation is not enough to justify sanctions.

Regardless of attorney's fees, costs must be shifted from a non-party to an issuing party if the costs are significant. Rule 45(d)(2)(B)(ii); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). The only consideration in determining cost-shifting is the significance of the cost of compliance; not if the compliance was unduly burdensome. *Id*. When discovery involves a nonparty, "the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party. If so, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder non-significant." *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc*., 319 F.R.D. 277, 281 (N.D. Cali 2017). 'Significant expense' is undefined by the Ninth Circuit as well as the Federal Rules. *Id*. However, "courts look to a nonparty's financial ability to bear the costs of production… [as well as] whether the nonparty has an interest in the outcome of the underlying case. Additionally, the nonparty seeking cost shifting must demonstrate that its costs are reasonable and resulted from compliance with a subpoena." *Id*. at 281-82.

Mr. Faraj's financial situation is unknown to the Court; but he has some interest in the underlying case as he is still held out as being on the new board for Defendants, though not as much interest as any of the parties to this case.  In most cases the Court would consider requiring the party to pay a reasonable cost of compliance, but not in this case.  Mr. Faraj's unreasonable demands, apparent evasion of service, repeated delays in compliance and failure to comply with this Courts directions has forfeited the receipt of any costs of compliance.  Mr. Faraj is hereby ordered to fully respond to the subpoena on or before January 3, 2022.  Plaintiff is granted leave to seek sanctions for any further delay or obfuscation in Mr. Faraj's compliance with the

subpoena.  It is THEREFORE ORDERED that Non-Party Haytham Faraj's Motion to Quash is

DENIED and Mr. Faraj  is ORDERED to fully respond to the subpoena by January 3, 2022.

DATED this _16th_ day of December, 2021.

Mark L. Carman
United States Magistrate Judge